## E. D. TULLIS V. THE STATE.

### No. 1976. Decided June 21, 1899.

**1. Plea in Bar—Agreement to Turn State's Evidence—Approval of Judge.**

Whether a party already charged by indictment shall be admitted upon agreement as a witness for the State against his codefendant, in consideration of his immunity from prosecution, is to be determined by the trial judge in his discretion; and, if such contract has been made, it is not binding upon the State unless it has the approval of the trial judge. Without such approval, the agreement will not constitute a good plea in bar to the prosecution.

**2. Same.**

Under provisions of articles 37 and 630, Code of Criminal Procedure, no case can be dismissed by the district or county attorney without the permission of the presiding judge, who shall be satisfied that the reasons are good and sufficient to authorize such dismissal.

**3. Same.**

While a contract of agreement to turn State's evidence made with the prosecuting officer should be made with the consent of the court, yet, where it has been made without the consent of the court and defendant has acted in

perfect good faith, it should be recognized by the court. But if such agreement
is made by the prosecuting officer not only without, but against the consent and
over the objections of the court, it is of no validity and should not be enforced.

**4. Same.**

. An agreement to turn State's evidence in consideration of immunity from
punishment can only be made with a witness in regard to a particular transaction
under investigation, and not as to two distinct transactions. If the offenses are
entirely distinct and separate offenses, the agreement is not binding upon the
court.

**5. Same—Defendant's Denial of the Agreement.**

Where defendant had made a contract with the district attorney of agreement
to turn State's evidence in consideration of his immunity from prosecution, and
he did appear and testified against his codefendant, but upon his cross-examination,
for· the purpose of impeaching his motive in that case, when asked if he had
made such agreement to turn State's evidence, he falsely and deliberately swore
he had made no such agreement to turn State's evidence and had been promised
no immunity by the district attorney; Held, he was guilty of perjury; and, having
tainted the transaction with his· perjury, the agreement ended and the State was
released from the contract.

**6. Same.**

An agreement to ·turn State's evidence in consideration of immunity from
punishment will not be enforced, and is not entitled to be enforced (1) where it
has not been made with the proper parties; (2) where made without consideration
as to the case on which defendant is being tried; (3) where· he, by his own corrupt
act, has released the State from any agreement that could bind her in any way
whatsoever.

APPEAL from the District Court of Travis. Tried below before
Hon. R. E. BROOKS.

Appeal from a conviction of burglary; penalty, two years imprison-
ment in the penitentiary.

There is no statement of facts in the record. The only question
presented on the appeal is the validity of defendant's plea· in bar of a
contract and agreement with the district attorney for immunity from
prosecution in this case in consideration of his turning State's evi-
dence.

*George F. Pendexter,* for appellant.—The record in this case pre-
sents, for the first time, a question of great importance in the pro-
cedure incident to the administration of the criminal laws of the State.
The question to be determined by the court is, whether the State can
avoid the consequences of an agreement made with a defendant by the
district attorney, solely for the reason that the consent of the presid-
ing judge had not been given to such agreement.

The record in this case is anomalous in this,—the State seeks to
avoid the agreement made with the defendant by the district attorney
in face of the fact that the district attorney is willing and anxious to
keep his plighted faith, and when forbidden so to do by the presiding
judge has refused to prosecute in violation of his agreement. In other
cases where the testimony of indicted persons has been used under
the promise of immunity, an examination will show that an issue was
presented touching the execution or scope of the agreement, or that
the officer making it on behalf of the State sought to evade its conse-

quences, but here the sworn representative of the State is prevented from carrying into effect an agreement fully performed by the other party.

The addenda of the judge to the bill of exceptions shows that he had many times informed the district attorney that he would not consent to a dismissal of the cases against appellant, and yet it appears therefrom that he did consent to a dismissal of one of these very cases. Like the irresolute maiden rendered famous by Lord Byron, he, protesting he "would never consent, consented." The record shows beyond question, the following facts: First. That the appellant and Taylor were separately indicted for the burglaries committed by them jointly on the same day. Second. That Taylor had been tried on one of the charges twice, without a result being reached. Third. That the district attorney thought it impossible to secure the conviction of Taylor without the testimony of appellant. Fourth. That acting under the belief that it was his duty to use the testimony of appellant against Taylor, the district attorney made the agreement set out in the record. Fifth. That appellant faithfully observed the agreement so far as he was permitted to do so, and stood ready to carry it out to the letter. Sixth. That while on the stand as a witness for the State in the case against Taylor, appellant, in answer to questions propounded to him by the district attorney, implicated himself in the offense for which Taylor was being tried and also the offense for which he was afterwards convicted.

Admitting the foregoing facts to be true, it is proposed by the State to disregard the agreement and punish the appellant for the very offense covered by the agreement. While it appears that it has been usual for the district judge to give his consent to agreements of this character made with appellant, it has never been held by this court that the consent of the judge was indispensable to a valid agreement. But upon the contrary such agreements have been upheld or regarded as binding in the absence of such consent. Harris v. State, 15 Texas Crim. App., 629; Cameron v. State, 32 Texas Crim. Rep., 180; Rios v. State, 39 Texas Crim. Rep., 675.

It is wholly immaterial to the issue here involved that appellant denied the agreement, that he is guilty, and that Taylor was too poor to employ an attorney to conduct his defense, or that "Tullis was represented by counsel employed for him by his friends or relatives," which facts appear to have deeply impressed the trial judge, as will appear from his addenda to appellant's bill of exceptions.

Appellant respectfully submits that a common regard for his rights, a proper respect for the administration of the law, should forbid the course taken by the State in this case, and he respectfully asks that the case be reversed and dismissed.

*Rob't A. John,* Assistant Attorney-General, for the State.—Appellant was tried and convicted, at the May term of the District Court

of the Twenty-sixth Judicial District, of the offense of burglary, charged to have been committed on the 7th day of February, 1899. The burglary is alleged to have been committed by the breaking and entering of a house owned and occupied by Charles W. Heath. Upon his trial on the merits of the case defendant was convicted, the jury assessing his punishment at two years confinement in the State penitentiary. There is no statement of facts in the record, and the bill of exceptions raises the sole issue in the case, and this is whether or not the trial court erred in not sustaining his plea in bar. This plea was filed by appellant, but not sworn to. The plea is to the effect that appellant should not be further prosecuted in this cause because of an agreement made with the district attorney to turn State's evidence. From the plea itself and the bill of exceptions to the action of the court in overruling said plea and the judge's explanation to said bill, it will be seen: (1) That appellant and one Taylor were indicted by several indictments for committing two burglaries,—one upon the house owned by one Shehan, and one upon the house of one Heath,— the latter being the case upon which appellant was convicted; (2) that the State had a strong case against appellant's codefendant, Taylor, as to one burglary, and a strong case against appellant for the case at bar; (3) that the district attorney, without the knowledge or consent, and after the express refusal, of the court, agreed that, if appellant would testify against his codefendant, Taylor, in both cases pending against Taylor,—that is to say in the weak case against Taylor as well as the strong case,—that the district attorney would dismiss both cases against appellant; (4) that appellant did testify against his codefendant, Taylor, in the Shehan burglary case, and the said codefendant was convicted upon appellant's testimony, together with the other facts proven; and that the State was permitted and did dismiss the companion case against appellant; (5) that appellant, while testifying in said case, did testify in a general way as to incriminating facts against himself concerning the case at bar; (6) that, however, this incriminating testimony was not used against him in the trial at bar in any way; (7) that upon the trial of the Taylor case appellant committed perjury in denying the existence of any agreement whatsoever in reference to his testifying against his codefendant.

Upon the question as to the plea at bar the State submits that the reason of the law permitting a confessed criminal to turn State's evidence is stated in the opinion of Judge Simpkins, in Cameron v. State, 32 Texas Criminal Reports, 180, wherein he says: "From the earliest times it has been found necessary for the detection and punishment of crime for the State to resort to the criminals themselves for testimony for which to convict their confederates in crimes. While such course offers a premium to treachery, and sometimes permits the more guilty to escape, it tends to prevent and break up combinations by making criminals suspicious of each other, and it leads to the punishment of guilty persons who would otherwise escape." This is also the

reason given for such practice in the case of People v. Whipple, 9 Cowen, 707, with the additionl reason that "such conduct pursued by the State prevents the hopelessness of mercy from rendering the criminal desperate." Whatever may be the reason for the law, the law itself is well settled by an unbroken authority, both outside of this State and by the decisions of this State. The court's attention, however, is called to the well-considered opinion in Bowden v. State, 1 Texas Criminal Appeals, 137, an opinion by Judge White, in which Greenleaf on Evidence, section 379, is quoted with approval, which uses this language: "Whether an accomplice already charged with crime by indictment shall be admitted as a witness for the government or not is determined by the judges in their discretion, as may best serve the purposes of justice." This opinion is further sustained by Bishop's Criminal Procedure, that where the contract is made, if it is in the nature of a contract, and where it is left to the discretion of the court to approve the same, the contract is not binding upon the State, unless it has the approval of the trial judge.

It will be seen from an examination of the authorities that the test of the validity in contracts of this kind depends upon three propositions: (1) Was the contract made by the proper authorities; that is to say, by the district attorney, with the consent and with the approval of the court? (2) Was it an agreement made in reference to the case under investigation? (3) If these two things concur, the agreement may be made, and the criminal would receive immunity from punishment, provided the following occurs: (a) Did the defendant honestly live up, or offer to live up, to his agreement? and (b) when he testified upon the witness stand, did he make a clean breast, and testify truthfully? The State lays down as a proposition:

(1) That in the case at bar the agreement to turn State's evidence is not binding upon the State, because not made with the concurrence and consent of the district judge in whose court said indictment against defendant was pending. This is the express provision of the law of this State. To otherwise hold would authorize the State's counsel to make agreements without the consent of the court, and in turn force the court to dismiss a prosecution by reason of the naked agreement so made. Arts. 37, 360, Code Crim. Proc.; Meyer v. State (Texas Crim. App.), 49 S. W. Rep., 600; Flemming v. State, 28 Texas Crim. App., 234; Kelly v. State, 36 Texas Crim. Rep., 480; Parchman v. State, 2 Texas Crim. App., 228; State v. McLane, 31 Texas, 260; Barrara v. State, 42 Texas, 260; Wright v. State, 43 Texas, 170; Bowden v. State, 1 Texas Crim. App., 141; 1 Greenl. on Ev., sec. 379. The Rios Case, 39 Texas Criminal Reports, 675, cited by appellant, is not in point, because in that case the issue of the consent of the court is not raised. The only case that could be held to hold contrary to this doctrine, and which in so many words overrules the Holmes Case, 20 Texas Criminal Appeals, 518, is the case above referred to of Cameron v. State, 32 Texas Criminal Reports, 180, and

yet in that opinion the judge deciding the same used the following language: "While it is true that such contract should be made with the district or county attorney, with the consent of the court, yet we think, where the court sees the contract was made, and the defendant acted in perfect good faith, it should be recognized by the court." It is therefore submitted that this authority can not be deemed to sustain the plea of this defendant, because in this case the contract was made, not with the tacit or implied consent of the court, but against the consent of the court, and over its repeated objection; and the defendant, by his perjury upon the witness stand, failed to act in good faith, and therefore is not entitled to the rule laid down in said case. To hold otherwise would render nugatory article 37, Code of Criminal Procedure, cited supra.

(2) As a second proposition, the State submits that in the case at bar appellant is not entitled to the benefit of his plea, because, even if the agreement was made in good faith, and if the agreement had been made with either the express or implied consent and concurrence of the proper authorities, including the trial judge, that nevertheless the consideration of the agreement was that appellant was to receive immunity from prosecution from an entirely distinct and separate offense and transaction than the one that he was to render service to the State as a witness; in other words, as shown, for disclosures in one case defendant was to receive a clear bill of health in another. This, it is insisted, is against public policy, and is against the rule that the evidence promised must be either upon the identical charge in which he testifies, or a charge connected with the same. This rule is well set forth in Heinzman's Case, 34 Texas Criminal Reports, 76. Judge Davidson, rendering the opinion, says that the rule is that such an agreement can only be made with the witness in regard to a particular transaction under investigation. "His protection exists to any connected offense which in good faith he discloses as a part of the one to which he was admitted as a witness, though in truth the transaction constitutes a separate crime, but not two distinct offenses." There could be absolutely no connection, or at least, if there was a connection between the burglary of the Shehan house and the burglary of the Heath house (appellant testifying in one case and being convicted in the other), the record in this case fails to disclose. Heinzman v. State, 34 Texas Crim. Rep., 76; Bish. Crim. Proc., secs. 1164, 1165; People v. Whipple, 9 Cow., 707. If, however, it be contended in this case that the agreement applied in good faith severally to the two cases against appellant,—that is, that he agreed to turn State's evidence against his codefendant Taylor, in the case upon which said Taylor was convicted, and in which he testified, and that he has lived up to said agreement, and that his agreement to turn State's evidence in the case in which appellant was convicted in the companion case against said codefendant was in its nature executory, and that he in good faith was willing, and, as stated in his plea in bar, in good faith tendered himself as a

witness in pursuance of said agreement,—then it is still insisted that that agreement was yet to be consummated, and the thing resolves itself back to the necessary consent of the trial judge as a condition precedent to the validity of the same. Appellant can not contend that wrong has been done to him by the testimony elicited, concerning the case upon which he was tried, in proving incriminating facts in his testimony upon the trial of Taylor's case. As stated by the trial judge, said testimony was only general in its nature, and it certainly was not binding upon the court, because at that time the court knew nothing about the agreement made to dismiss the case at bar, or in fact either case; that the agreement was not disclosed to the court until after this testimony had been elicited; and especially is this fact manifest because appellant then swore, and the trial court had a right to rely upon the truth of his oath, to the effect that he had no agreement whatsoever, of any nature, to dismiss the case at bar. And the incriminating facts so elicited concerning the case at bar by appellant in his testimony against Taylor was in no sense used against him upon the trial of his case. Therefore the court,—a necessary party to such contract,—with nothing whatsoever to disclose the agreement relied upon by appellant in either case, was not given opportunity to impliedly or otherwise consent to the dismissal of the case at bar. But the State again reiterates that the appellant, with his learned and able counsel to advise him, not only was chargeable with notice that the law required the approval of the judge to give validity to agreements of this kind, but, by the exercise of any sort of diligence, could have ascertained the fact of his refusal; and the appellant, by falsely testifying that no such agreement existed, withheld from the court the fact of the agreement which he now relies upon as a reason why he should not be prosecuted. This conduct of appellant relieves the court absolutely from the contention that by reason of his testimony, which incriminated him in this case in the trial of his codefendant, he gave an implied consent to dismissal of the case at bar. The agreement approved by the court has been consummated, and the consummation of that agreement could give appellant no rights whatsoever under an entirely distinct transaction and prosecution.

(3) As a third proposition, the State submits that the appellant did not honestly and in good faith, but corruptly, testify in response to the agreement made by the State. It is submitted that appellant, by the commission of perjury when testifying as against his codefendant, released the State from any obligation whatsoever made by virtue of the contract. From an inspection of the bill of exceptions, it will be seen: First. That appellant, in the plea, alleges that in pursuance of his agreement "he testified fully and truthfully to such facts within his knowledge, not only relating to the offense charged in the case on trial, but also to said case No. 12,813" (the Heath case). By an inspection of the testimony elicited solely by appellant (who himself

neither swears to the petition nor was introduced as a witness on the plea), it will be seen that appellant swore corruptly. Warren W. Moore, the district attorney, testified as follows: "He [the defendant], while on the stand as a witness in said case against Taylor, denied that such agreement had been made between him and defendant; but that such testimony was false." Mr. Pendexter, attorney for appellant, after testifying that previous to the appellant's evidence in the Taylor case, as stated, the appellant in person had made an agreement with the district attorney to dismiss both cases in consideration of the appellant testifying against his codefendant, then says "that defendant, when on the stand as a witness in said case against Taylor, denied that he had made said agreement with the district attorney, or that a promise of immunity had been made to him. Upon that condition he testified in said case." Either upon direct, but in all probability upon cross, examination, and going to impeach the motive of appellant when a witness against his codefendant,—a material inquiry in the case that was then on trial,—appellant falsely and deliberately swore that he had no agreement to turn State's evidence, and had been promised no immunity by the district attorney, which positive oath is contradicted by not only the district attorney, but by appellant's own counsel. This fact is further certified to by the trial judge, and is one of his reasons for striking out said plea. Under the authority of George v. State, 40 Texas Criminal Reports, 646, it will be seen that this is perjury in the law; and that the fact elicited, though it may be merely an effort to impeach, is a material issue, and is sufficient upon which to predicate perjury known to our statute. It is therefore submitted by the State that the defendant, by committing perjury, released the State of any obligation by virtue of the contract. All the authorities are a unit that appellant, in order to reap the reward for turning State's evidence, must make a clean breast, and his testimony must not be corrupt. His story told upon the witness stand in reference to the transaction must be the truth. It would be no answer to this proposition that his testimony denying that he was promised an immunity, and therefore destroying the idea that he had a motive to falsify in the case then on trial, was to the State's advantage in that particular trial, and therefore the State will not be heard to complain. The object of the law is to prevent crime, not to increase crime; and therefore, by reason of the fact that appellant testified falsely and corruptly, even though it did redound in that particular trial to the State's benefit, and to the injury of the defendant then on trial, defeats the very purpose and reason of the law, and for that reason releases the State from any obligation to carry out her part of the contract. The State seeks only the truth, and when a criminal in the performance of his agreement taints the transaction with his perjury, the agreement ends, and the State is released. Authorities: Camron v. State, 32 Texas Crim. Rep., 180, Bish. Crim. Proc., sec. 1164; Heinzman v. State, 34 Texas Crim. Rep.,

76; Holmes v. State, 20 Texas Crim. App., 518. The trial judge's explanation to the bill of exceptions is especially referred to as a clear explanation of the reasons why the plea should not be sustained, and the State could have well rested upon the reasons assigned by him. The judge says: "First. After hearing the evidence, the plea was stricken out, because the agreement to dismiss this case was made by the district attorney without the approval of the court, and against his repeated objection. Second. The agreement was made to dismiss this case in consideration of said Tullis testifying as a witness in an entirely different transaction, not growing out of or connected with the transaction in which he testified. Third. Because the defendant in this case testified falsely on the trial of such case, in that he did testify as to the consideration for his testimony in this case." It is further shown that the evidence was not only ample to sustain the verdict (which is to be presumed from the verdict itself in the absence of a statement of facts), but, as stated by the trial judge, the evidence in the case at bar against appellant was absolutely overwhelming. It will be seen, then, that if the State, by the use of appellant's testimony against Taylor, secured a conviction in the Sheehan burglary, appellant has been thoroughly repaid for his bargain in securing a dismissal of that case against him. It is suggested that every reason of. the law in reference to said evidence is against appellant. He claims he made a contract. In the first place, he did not make it with the right parties. In the second place, the contract he made was without consideration as to the case on which he was tried. In the third place, he, by his own corrupt act, has released the State from any agreement that could bind her in any way whatsoever; and from the record, he having received his just deserts, it is respectfully submitted that the case should be affirmed. Authorities: Kelly v. State, 36 Texas Crim. Rep., 480; Maeyers v. State (Texas Crim. App.), 49 S. W. Rep., 381; Turney v. State, 40 Texas Crim. Rep., 561.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of burglary, and his punishment assessed at two years confinement in the penitentiary. We have carefully read this record, as well as the briefs filed by both parties. The brief of the Assistant Attorney-General fully presents the statement of the case, and discusses the question involved in the appeal and the law applicable thereto. It accords with our view of the law applicable to that issue, and is a very elaborate and able exposition of the law involved in this appeal. We therefore adopt the brief of the Assistant Attorney-General as the opinion of the court in this case. The judgment is affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]