ON REHEARING

FOURNET, Chief Justice.
While the defendant, Marcel Hingle, was serving a sentence of two and a half years at hard labor imposed when he pleaded guilty in Section “C” of the Criminal District Court for the Parish of Orleans to “attempted possession” under a Bill of Information charging him with “possession of marijuana,” he was returned to the same court for prosecution as a multiple offender on a writ procured by the district attorney. The defendant thereupon — in a motion to quash that was overruled — interposed as a plea in bar the district attorney’s agree *857 ment of immunity from such prosecution when he pleaded guilty to "attempted possession.” He is appealing from his conviction and sentence as a fourth offender.
As pointed out by the author of the majority opinion when this case was originally before us, according to the weight of authority in this country, a prosecuting attorney cannot, without the advice and/or consent of the court, make a binding agreement exempting a person from criminal liability who is willing to (1) testify against others, or (2) plead guilty to a lesser offense. A study of all of the cases and authorities on this subject, however, discloses that in those jurisdictions where the advice or consent of the court is required before the granted immunity can be effective, the decisions are controlled by specific statutory provisions to this effect, or predicated upon jurisprudence traceable to the common law as adopted in this country early in its history, and which, although granting to the attorney general in England the power to make such agreements, hedged it about with restrictions. See 16 C.J. §§ 65, 759, pp. 94, 417; 22 C.J.S. Criminal Law § 423(5), p. 1186; 1 Wharton’s Criminal Law 394, Section 165; 8 R.C.L. 125, Section 101; 15 Am. Jur. 17, Sections 322 and 323; Tullis v. State, 41 Tex.Cr.R. 87, 52 S.W. 83; Camron v. State, 32 Tex.Cr.R. 180, 22 S.W. 682; Scribner v. State, 9 Okl.Cr. 465, 132 P. 933, United States v. Ford, 99 U.S. 594, 25 L.Ed. 399; State v. Keep, 85 Or. 265, 166 P. 936; People v. Groves, 63 Cal.App. 709, 219 P. 1033; State v. Lopez, 19 Mo. 254, 255; People v. More, 71 Cal. 546, 12 P. 631; Lowe v. State, 111 Md. 1, 73 A. 637, 24 L.R.A.,N.S., 878; Runnels v. State, 28 Ark. 121; and the annotation at 85 A.L.R. 1177. Nevertheless, as recognized in Scribner v. State, supra, in those states "in which a county attorney may enter a nolle prosequi without the consent of the court he may grant immunity by contract without the approval of the court * * [1] See, 1 Varon’s Searches, Seizures, and Immunities 511, Section 3; Commonwealth v. St. John, 173 Mass. 566, 54 N.E. 254; People v. Bogolowski, 326 Ill. 253, 157 N.E. 181; State of West Virginia v. Ward, 112 W.Va. 522, 165 S.E. 803, 85 A.L.R. 1175; and People v. Siciliano, 185 Misc. 149, 56 N.Y.S.2d 80. In the latter case the New York court was emphatic in stating that “The practice of accepting a guilty plea under one indictment upon stipulation that the other indictments then pending against the accused will be dismissed is one of long standing in our criminal courts. The right of a district attorney to make such an agreement and the power of the court to enforce it have never been successfully chal *859 lenged.” [2] See, also, State ex rel. Griffin v. Smith, 363 Mo. 1235, 258 S.W.2d 590; People ex rel. Elliott v. Covelli, 415 Ill. 79, 112 N.E.2d 156; State ex rel. Dowd v. Nangle, 365 Mo. 134, 276 S.W.2d 135; and State v. Montgomery, Mo., 276 S.W.2d 166. (The emphasis has been supplied.)
The rationale for such a ruling is to be found in a number of cases, notably Commonwealth v. St. John, supra, where the court stated that “When such promises are made by the public prosecutor, or with his authority, the court will see that due regard is paid to them, and that the public faith which has been pledged by him is duly kept.” This is particularly true where the accused, in reliance on such a pledge, has carried out his part of the agreement, and, in doing so, may have relinquished valuable fundamental rights, such as the constitutional guarantee he cannot be compelled to give evidence against himself, a trial on the merits, and the possibility of being entirely exonerated if the evidence is weak and insufficient to sustain a conviction. See, State v. Mockosher, 205 La. 434, 17 So.2d 575; People ex rel. Valle v. Bannan, 364 Mich. 471, 110 N.W.2d 673; and Commonwealth v. Smith, Ky., 244 S.W.2d 724.
Louisiana is in the category of those states that have no statutory or jurisprudential prohibition against the power of a district attorney to-nolle prosequi a case or grant immunity to an accused completely independent of the court. On the contrary, under our specific statutory provisions, “The district attorney is the representative of the public and the legal adviser of the grand jury. * * *” and, “Subject to the supervision of the attorney-general * * * shall have entire charge and control of every criminal prosecution instituted or pending in any parish wherein he is a district attorney, and shall determine whom, when, and how he shall prosecute * * *.” Moreover, “The exercise of the power to enter a nolle prosequi is a matter that shall be subject to the sound discretion and control of the district attorney, and in order to exercise that power he shall not have to obtain the consent or permission of the court.” Articles 18, 17, and 329, respectively, of the Code of Criminal Procedure, now R.S. 15 :- 18, 17, and 329. (The emphasis has been supplied.)
Dr. Dale E. Bennett of the Louisiana State University law faculty points out in his article in 14 Louisiana Law Review, referred to above in Footnote No. 1, that “Article 329 codified the existing Louisiana jurisprudence and general common law rule when it stated that power to nolle prosequi an indictment should be ‘subject to the sound discretion and control of the district attorney, and in order to exercise that power he shall not have to obtain the consent or permission of the court.’ ” ■ He also *861 pointed out that “A fear that the prosecutor’s discretion may be abused led to the proposal in the American Law Institute’s Code of Criminal Procedure that a prosecution shall not be dismissed except by court order and for good cause entered of record by a written statement,” from which source, it may be added, stem many of the statutes on the subject adopted in the various states and which, to a large degree, account for the “weight of authority” in this country above referred to, but which provision has also been characterized as “as misguided as it is well-intentioned.” [3]
And while Dr. Bennett recognized that “Such a rule puts tremendous power in the hands of the district attorney, who may thus nullify the findings of the grand jury,” he correctly points out that “Actually this danger is largely conjectural, since the force of public opinion and the district attorney’s sense of public responsibility will generally preclude such a summary disposition of grand jury indictments.” Further emphasizing this point he states: “There are a number of rather convincing arguments for not limiting the district attorney’s full discretionary power to nolle prosequi indictments. Foremost of these are the facts that the district attorney frequently operates with a staff which is inadequate for the proper prosecution of all charges which may be brought by an overactive grand jury, and that the district attorney has the best opportunity to investigate and sift such charges.”
These views with respect to preserving the prosecuting attorney’s discretion in all of its amplitude with respect to the power to nolle prosequi criminal charges, or, as inclusive therein, bargain with an accused for evidence and testimony, or pleas to lesser offenses, are shared by others of note, as, for example, the commissions headed by the then Attorney General of the United States George W. Wickersham, reflected in the reports of these commissions issued in 1931 as “Report on Prosecution,” and “Report on The Cost of Crime,” and by Thurman W. Arnold, Professor of Law of Yale University. In the article at 50 Yale Law Journal 110 it is pointed out that it is only in the privacy of his office that a prosecuting attorney “can conduct the plea bargaining which * * * is a highly useful as well as usual procedure in criminal administration,” since, as Professor Arnold emphasizes in an article at 42 Yale Law Journal, 1, 9, “His choice will be either to make reasonable compromises” with the innumerable offenders caught in the net, many of whom are unimportant, “or else *863 * ■ * * clog the machinery with relentless prosecution of comparatively harmless persons.”
But even should it be conceded that the consent or approval of the trial judge was necessary to perfect the agreement pleaded in bar of the charge levelled against the defendant as a multiple offender under Louisiana law, we think the evidence clearly discloses the consent and approval of the trial judge in this respect was secured, a fact conceded by the state in its brief on rehearing.
The uncontradicted evidence on this phase of the matter shows that after the assistant district attorney in charge of the prosecution of Hingle in Section “C” of the Criminal District Court for the Parish of Orleans had tentatively agreed with defense counsel on the “package deal” proposed by that counsel, as will hereinafter be set out, the approval of the assistant’s superior thereto was sought and secured as the result of several conferences held in the office of the district attorney and attended by that official, his assistants assigned to Sections “C” and “E” (in both of which there were cases pending against Hingle), and defense counsel. As a result, the assistant assigned to Section “C”, in seeking the approval of the trial judge, left with him the police record of Hingle that was in this assistant’s file, and on which the trial judge noted in his own hand the several sentences Hingle had served under previo’us convictions. And while defense counsel was experiencing difficulty in eliciting from this assistant (while on the stand during the trial of the motion to quash in the instant case) an admission that in discussing the so-called “deal” with the trial judge he (the assistant) had recommended a sentence that had been agreed upon by all counsel (two and a half years), the trial judge, to avoid further examination along this line interrupted the interrogation with the most emphatic observation: “I can help the situation. You (the assistant) did recommend to me two and a half years in this case, and I well know you did, and you did it in the presence of Mr. Shea (defense counsel).” The defendant was not only sentenced accordingly, but, as further shown by the evidence, the trial judge, in accepting Hingle’s plea of guilty to the lesser offense of “attempted possession” of narcotics and pronouncing that sentence, reminded Hingle that he “could have been charged as a fourth offender.” (The emphasis has been supplied.)
It is obvious, however, from the above quoted provisions of our Code of Criminal Procedure that the legislature of Louisiana has clothed our district attorneys and their assistants with very broad powers and discretion with respect to whom, among those-charged with crimes, they will prosecute, and granted them the power to determine, without the advice or consent of the court, what charges they will nolle prosequi *865 (whether embodied in informations or indictments) and with whom they will bargain for testimony or pleas whenever, in the exercise of that discretion, it is deemed advisable under the circumstances of the particular case. And when in a bargain made by a district attorney an accused is promised immunity, the courts should give effect to such agreement, for it would not be consonant with the pledge of the state’s public faith reposed in these officers by the legislative branch of our government to permit them to repudiate bargains made with persons accused of crimes who are acting in good faith, and, in reliance thereon, comply with their commitments by relinquishing valuable and fundamental rights.
Actually, the prosecuting attorney does not even contend our law is other than as above set out, for he argues in brief that the trial judge was powerless to “control the action of the district attorney”, in filing the multiple offender charges.[4] His case is predicated, rather, on the contention that he is not bound by the agreement to grant immunity from such charge in this case because an important element of the agreement was the provision that the defendant had not been previously convicted of a crime of violence, and, at the time the agreement was confected, he was unaware Hingle had been convicted of armed robbery.
On this phase of the matter, the record discloses that two Bills of Information were filed in the district attorney’s office against the defendant on September 21, 1959, in both of which he was charged with separate and distinct charges of possession and sale of marijuana, Bill of Information No. 164— 966 being allotted to Section “E” of the Criminal District Court for the Parish of Orleans, and Bill of Information No. 164— 967 being allotted to Section “C”. The record further reveals, as summarized in the state’s brief, that on the day before the scheduled trial the assistant district attorney assigned to Section “C” called defense counsel on the telephone to ask whether Hingle was going to plead guilty or go to trial. At this time, and in subsequent conversations in the office of the district attorney, defense counsel suggested a plea would be entered if the charge in Section “C” was reduced to “attempted possession” of narcotics, the case in Section “E” dismissed, and the defendant not charged as a multiple offender. The state, recognizing its chance of a conviction had been weakened by the death of the chemist who had analyzed the material taken from the accused at the time of his arrests — and who *867 would not, therefore, be available to testify — agreed to this offer. The trial judge was apprized of this in his chambers by counsel for both sides, and acquiesced therein, as shown hereinabove.
The question of whether the agreement was conditioned upon the fact that the accused “had not been convicted of a crime of violence” is one of fact that was not resolved in the trial court, although the judge, in his reasons for overruling the motion to quash as set out in his per curiam, did recognize that “there are inequities in the situation in behalf of the defendant Hingle” in that “he did give up a substantial right to a trial on the merits.”
Our appreciation of the evidence, after a careful study and analysis, is that the agreement confected between the district attorney and defense counsel was unconditional. However, it is apt to observe that the assistant assigned to Section “C,” in recommending to his superior the acceptance of the “deal” proposed by defense counsel, acted in good faith, believing at the time that Hingle had never previous thereto been convicted of a crime of violence as the record in his file on this case furnished him by the police department— and on which he relied — failed to disclose such a conviction.[5] This conclusion is fortified by the fact that this assistant noted in his own handwriting in this file that according to defendant’s record he had never previous thereto been convicted of a crime of violence. It was only after publicity in the press that he secured a new copy of the police department’s record on Hingle and discovered the prior conviction for armed robbery.
For the reasons assigned, the conviction and sentence of the defendant as a multiple offender are annulled and set aside, and he is ordered returned to the state penitentiary at Angola to complete service of the sentence originally imposed upon him in Section “C” of the Criminal District Court for the Parish of Orleans under his plea of guilty of “attempted possession” of narcotics.

. See the discussions at 42 Yale Law Journal 1, 9; 50 Yale Law Journal 107, etc., and 14 Louisiana Law Review at pages 25 and 26, as well as the authorities there cited.

. This procedure in New York has since been changed by statute.

. 50 Yale Law Journal at page 110. Significantly, the Louisiana legislature has never felt it wise to accept this recommendation of the American Law Institute as embodied in one of the articles of its proposed model Code of Criminal Procedure by changing the provisions of Article 329 of our own Code of Criminal Procedure on this subject, above quoted in full.

. Of particular importance on this phase of the matter are the provisions of R.S. 15:529.1, as amended by Act 469 of 1958, which give the district attorneys of this state lull discretion in determining whether an accused is to be charged as a multiple offender when his record discloses he has previously been convicted as a felon under the laws of this state, the laws of another state, or of the United States.

. The police record in the file of the assistant assigned to handle the criminal docket in Section “E” disclosed Hingle’s conviction of the crime of armed robbery.