THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MORRIS BOGOLOWSKI, Plaintiff in Error.

*Opinion filed June 18, 1925.*

1. CRIMINAL LAW—*use of testimony of accomplice under promise of immunity rests in discretion of State's attorney.* The use or rejection of the testimony of an accomplice and the question of his immunity from punishment are committed largely to the discretion of the State's attorney, though the court may exercise a discretion as to the judgment or order to be entered.

2. SAME—*when accomplice who has testified for State should be permitted to withdraw plea of guilty.* Where a plea of guilty has been induced by promise made by authority of the public prosecutor in consideration of a full and fair disclosure by the defendant as a witness against his confederates, and the defendant has made such disclosure but the promise of the prosecutor has not been kept, the court should grant leave to withdraw the plea.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN P. MCGOORTY, Judge, presiding.

EDWARD MAHER, (STEPHEN T. RONAN, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

Morris Bogolowski was indicted jointly with Larry Heffernan, William Cramer and Otto Christensen for the murder of Joseph Lanus. Each entered a plea of not guilty, but Bogolowski withdrew his plea, entered a plea of guilty and testified for the People. Lanus was an automobile dealer and the murder was committed in his salesroom in the perpetration of a robbery. Bogolowski participated in the crime though he was not in the room at its actual commission but was acting as a guard outside. His testimony was essential to the conviction of the other three defendants. They were convicted and Heffernan and Cramer were sentenced to death and Christensen to life imprisonment. On a writ of error the judgments were reversed. (*People* v. *Heffernan*, 312 Ill. 66.) During the pendency of the writ of error the case against Bogolowski was continued upon motions of his counsel made from time to time at the suggestion of the State's attorney. On a second trial Heffernan and Cramer were again convicted and were sentenced to life imprisonment. The indictment against Christensen was dismissed by the State's attorney with leave to re-instate. In the meantime Bogolowski had been confined in the county jail. On November 26, 1924, on motion of the State's attorney the case against him was stricken with leave to re-instate. This order was, however, on the same day vacated and set aside, Bogolowski entered his motion to withdraw his plea of guilty, and the cause was continued from time to time until December 22, 1924, when the court overruled the motion and sentenced Bogolowski to imprisonment for fourteen years. A writ of error has been sued out to reverse this judgment.

Before the trial Bogolowski's attorney, I. J. Berkson, had a number of interviews with William Scott Stewart, who was the assistant State's attorney in charge of the case for the People, and he testified that he always got the im-

pression that Bogolowski would be given immunity, particularly after the first case was tried and the plea was taken. Stewart asked him to make the motions to continue the case to have it go over until the Supreme Court had decided the writ of error, and he made those motions at the request of the State's attorney. He told Stewart that it might take six months to a year, and Stewart said, "After that time, if he serves that time he probably will not serve any more;" and again he said, "Your man Bogolowski should never get any more than Christensen gets," and "Christensen is out and your man will get out, also." Stewart testified: "At the time that this case went to trial I wanted to be very careful that I made no promises and I practically told Mr. Berkson that would destroy the man's testimony. Berkson came in day after day and if he has the impression now that he did get a promise, I will say to the court he was warranted in getting the impression. I did not promise him directly. * * * I think I did say, 'Well, the undisputed evidence is that whatever part your man had he was not in the firing the shot and if he was there at all he was on the outside. Christensen was on the outside, and I think you may feel quite sure that we won't give him any worse than Christensen gets, and as far as I am concerned that will be my recommendation, so you don't need to worry about that.' * * * I think I said to Berkson when the plea of not guilty was withdrawn, 'You can be sure as far as I am able to control the situation, he will never get any worse than the other man on the outside.' " This assurance was given about fifteen minutes before the case went to trial and was with direct reference to changing the plea from not guilty to guilty.

At the hearing of Bogolowski's motion to withdraw his plea of guilty Stewart had ceased to be an assistant State's attorney. The State's attorney was represented by S. M. Hamilton, who declined to express any opinion as to whether or not the plea should be withdrawn, but did say

that the People did not have sufficient evidence to make out a *prima facie* case against Christensen and he did not know whether they had sufficient evidence to make out a *prima facie* case against Bogolowski.

The plaintiff in error contends that he is entitled to the same treatment that Christensen received,—that is, that the case be stricken with leave to re-instate,—and if that is not done that he is entitled to withdraw his plea of guilty. In *Hoyt* v. *People,* 140 Ill. 588, it is said, quoting from Best on Evidence: "No doubt, if it was not absolutely necessary for the execution of the law against notorious offenders that accomplices should be received as witnesses, the practice is liable to many objections; and though under this practice they are clearly competent witnesses, their single testimony, alone, is seldom of sufficient weight with the jury to convict the offenders, it being so strong a temptation to a man to commit perjury if by accusing another he can escape himself. Let us see what has come in lieu of the practice of approvement: a kind of hope that accomplices who behave fairly, and disclose the whole truth and bring others to justice, should themselves escape punishment. This is in the nature of a recommendation to mercy: The accomplice is not assured of his pardon but gives his evidence *in vinculis,*—in custody; and it depends on the title he has, from his behavior, whether he shall be pardoned."

In reference to this same subject it was said in Greenleaf on Evidence, sec. 379: "The admission of accomplices, as witnesses for the government, is justified by the necessity of the case, it being often impossible to bring the principal offenders to justice without them. The usual course is, to leave out of the indictment those who are to be called as witnesses; but it makes no difference as to the admissibility of an accomplice, whether he is indicted or not, if he has not been put on his trial at the same time with his companions in crime. * * * But whether an accomplice already charged with the crime, by indictment, shall be ad-

mitted as a witness for the government, or not, is determined by the judges, in their discretion, as may best serve the purpose of justice. If he appears to have been the principal offender he will be rejected. And if an accomplice, having made a private confession upon a promise of pardon made by the Attorney General, should afterwards refuse to testify, he may be convicted upon the evidence of that confession."

In Wharton on Criminal Law (vol. I, 3d ed. 785,) it is said: "It has been said in Virginia, that, though a *particeps criminis* called as a witness for the commonwealth on the trial of his accomplice, voluntarily give evidence, and fully, candidly and impartially disclose all the circumstances attending the transaction, as well those which involve his own guilt as those which involve the guilt of others, he will yet have no right to a pardon for his own guilt, and therefore no right to demand a continuance of his cause until he can have an opportunity of applying to the executive for such pardon. Judge McLean, however, has decided that if an accomplice be admitted to testify, and appear to have acted in good faith in giving testimony, the government is bound in honor to discharge him. The English practice, under such circumstances is, where the witness makes a clean breast, to grant a pardon."

The decision of Judge McLean referred to is the case of *United States* v. *Lee*, 4 McLean, 103, in which it is said: "An accomplice is used by the government because his evidence is necessary to a conviction. Being called as a witness there is an implied obligation by the government, if not expressed, that if the witness shall make a full and honest disclosure of the facts which have a direct bearing on the case he shall not be prosecuted. * * * In the case of Lee, he was used as a witness with the understanding that he would not be prosecuted to conviction, provided he made a full disclosure in regard to the acts of Warner. The court have heard his evidence and there seems to be

no doubt that the disclosures made by the witness were true. He implicated himself, being the driver of the mail stage, but he was instigated to do the act by Warner, who was a much older and more experienced person. The court think Lee as a witness has acted in good faith and that the acquittal of Warner by the jury in no respect affects the right of the witness to claim an exemption. The government is bound in honor, under the circumstances, to carry out the understanding or arrangement by which the witness testified, and admitted, in so doing, his own turpitude. Public policy and the great ends of justice require this of the court. If the district attorney shall fail to enter a *nolle prosequi* on the indictment against Lee the court will continue the cause until application can be made for a pardon. The court would suggest that to discontinue the prosecution is the shorter and better mode."

The constitution of the State of Texas permits the exercise of the pardoning power only after conviction, and in that State a plea by a defendant indicted for burglary that by agreement with the county attorney that in case the defendant would turn State's evidence against his confederate he should receive immunity from prosecution the defendant testified at the preliminary examination and was then recognized to appear as a witness in the case in the district court, and that he was ready and willing to carry out his agreement, was held to be a good plea, the court saying: "If the State can make a contract with the defendant for immunity from prosecution for his offense, it is due to her own dignity that the contract be carried out in perfect faith." *Camron* v. *State,* 32 Tex. Crim. 180.

The evidence of accomplices has always been admitted, as well from judicial necessity as public policy, and in England it has been recognized that in consideration of a full and true disclosure the accomplice testifying has an equitable claim to the mercy of the crown, and the court will, on application, put off his trial to enable him to apply

for a pardon. Of this practice it was said by Chitty in
volume 1 of his treatise on the criminal law, page 769:
"Such pardons are, no doubt, necessary in particular cases,
but as a regular system of jurisprudence they are liable to
serious objection. The law confesses its weakness by call-
ing in the assistance of those by whom it has been broken.
It offers a premium to treachery, and destroys the last
virtue which clings to the degraded transgressor. Still, on
the other hand, it tends to prevent any extensive agreement
among atrocious criminals, makes them perpetually suspi-
cious of each other, and prevents the hopelessness of mercy
from rendering them desperate." "The practice of allow-
ing the partakers in the crime to convict their companions
in guilt was introduced in the room of the old custom, by
which they were allowed to become approvers. This latter
mode of procuring testimony was, by suffering a criminal
to confess as well the particular crime charged upon him
as all other treasons or felonies in which he was either
an agent or contriver. On the court's admitting his offer,
which it was always in their discretion to refuse, the party
accused was immediately put on his trial, whereon, if he
was acquitted, the approver was sentenced to death; but
if convicted, the latter obtained his pardon. Instead of this
singular method of bringing offenders, and frequently the
innocent, to punishment, the testimony of accomplices is ad-
mitted, in the way we have already noticed." (1 Chitty's
Crim. Law, 603.) "The engagement of a magistrate to
an accomplice, that if he will give his evidence he will ex-
perience favor, is merely in the nature of a recommenda-
tion to mercy, for no authority is given to a justice of the
peace to pardon an offender and to tell him that he shall
be a witness against others. He is not therefore assured
of his pardon but gives his evidence *in vinculis,*—in cus-
tody; and it depends on his behavior whether he shall or
shall not be admitted to mercy. A justice has no authority
to select whom he pleases to pardon or prosecute, and a

prosecutor himself has even less power, or rather pretense, to select than a justice of the peace. It is merely an equitable claim to the mercy of the crown, from the magistrate's express or implied promise of an indemnity upon certain conditions of a most candid disclosure." (Ibid. 82.)

In *People* v. *Whipple,* 9 Cow. 707, it is said that the admission of a party as a witness amounts to a promise by the court of a recommendation to mercy upon condition of his making a full and fair disclosure of all the circumstances of the crime; and further: "If an accomplice perform the condition on which he is admitted as a witness for the People according to its spirit, we hold ourselves bound in duty and in conscience to redeem the promise which the law raises in his favor, to the very letter."

The English practice of continuing the case against an indicted accomplice who has turned State's evidence and testified against his confederates to enable him to obtain a pardon, which he may plead in bar of the indictment, has never prevailed in Illinois. In this State the method has been, in accordance with the practice stated in Bishop's New Criminal Procedure, (vol. 2, secs. 1161, 1166,) either for the State's attorney to enter a *nolle prosequi* and call the defendant thus discharged as a witness, or to require him to plead guilty and examine him as a witness, after which, if his testimony shows a full and truthful disclosure of the facts, his plea may be set aside and a *nolle prosequi* or some other form of discharge may be entered. It is said in section 1164 of the same work: "As to the nature of the agreement with the accomplice, doubtless, ordinarily the mere fact that he testifies for the government freely and fully, acknowledging his own participation in the offense, implies the common equitable understanding, not amounting to an agreement enforceable at law, that a pardon shall follow." The admission or rejection of the testimony of an accomplice and the question of his immunity from punishment are committed largely to the discretion of the State's

attorney, though the court may exercise a discretion as to the judgment or order to be entered.

The motion to withdraw a plea of guilty is addressed to the discretion of the court, but where the plea of guilty has been induced by a promise made by authority of the public prosecutor in consideration of a full and fair disclosure by the defendant as a witness against his confederates, and the defendant has made such disclosure but the promise of the prosecutor has not been kept, leave to withdraw the plea should be allowed.

The judgment of the criminal court is reversed and the cause is remanded.                    *Reversed and remanded.*