(No. 18064.—Judgment reversed and defendant discharged.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MORRIS BOGOLOWSKI, Plaintiff in Error.

*Opinion filed June 22, 1927.*

1. CRIMINAL LAW—*a confession obtained by a promise of immunity is not admissible.* A confession obtained under a promise or hope of immunity is not admissible in evidence, for the reason the law presumes that such confession was prompted by that influence and was not voluntarily made.

2. SAME—*when defendant is entitled to release under promise of immunity.* Where a defendant is induced to take the stand and testify against his co-defendants, confessing his participation in the crime, under a promise by the assistant State's attorney in charge of the case that he will be granted immunity, and after conviction of the co-defendants, and until their case is finally disposed of after being taken to the Supreme Court and remanded for another trial, defendant continues to remain in jail for nearly three years, his attorney continuing his case from time to time at the request of the State's attorney, he is entitled to his release in accordance with the promise of immunity.

THOMPSON, J., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. EMANUEL ELLER, Judge, presiding.

EDWARD MAHER, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and MERRILL F. WEHMHOFF, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Morris Bogolowski was convicted in the criminal court of Cook county for murder and sentenced to fourteen years in the penitentiary. He has sued out this writ of error to review the judgment, and will hereafter be referred to as defendant.

The party murdered was Joseph Lanus, an automobile dealer. Following the murder of Lanus, Larry Heffernan, William Cramer, Otto Christensen and defendant were indicted for the crime. The first three named men, when the case came to trial, entered pleas of not guilty, as did also defendant, who subsequently withdrew the plea, entered a plea of guilty and testified for the State. Heffernan, Cramer and Christensen were convicted. Heffernan and Cramer were sentenced to death and Christensen to life imprisonment. It appears that defendant's plea was not at that trial disposed of. The other defendants sued out a writ of error to this court, and pending the determination of that case by this court the case as to defendant was continued, on his motion, from term to term until this court filed an opinion on April 14, 1924, reversing the judgment of conviction. (*People* v. *Heffernan*, 312 Ill. 66.) During all that time defendant was confined in jail. After the reversal of the judgment of conviction of Heffernan, Cramer and Christensen the case as to them was again tried. Heffernan and Cramer were convicted and sentenced to life imprisonment and are now serving the sentence. The indictment as to Christensen was dismissed by the State's attorney with leave to re-instate, and, as we understand it, he was released from custody and has since died. November 26, 1924, on motion of the State's attorney the case as to defendant was stricken with leave to re-instate, but on the same day the order was vacated and he was again taken into custody and placed in jail. He entered his motion for leave to withdraw his plea of guilty, and the cause was continued as to him until December 22, 1924, when the motion

was overruled and he was sentenced to imprisonment for fourteen years. He sued out a writ of error to this court, and the judgment of conviction was reversed in an opinion filed June 18, 1925. (*People* v. *Bogolowski,* 317 Ill. 460.) After the remandment of the case to the criminal court the cause was continued from time to time until July, 1926, defendant remaining in jail. When the case came on for trial in July, defendant was represented by the attorney appearing for him in this court. He had previously been represented by I. J. Berkson. Before the trial was entered upon defendant's counsel moved that the State's attorney enter a *nolle* in view of the decision of this court in *People* v. *Bogolowski, supra.* On that occasion the People were represented by assistant State's attorney Hamilton. Previous to that time William Scott Stewart was the assistant State's attorney representing the People in the prosecution. Hamilton refused to *nolle* the indictment. Thereupon defendant moved that he be discharged in accordance with the decision referred to. The court denied the motion, and counsel representing defendant moved that leave be given Berkson to withdraw of record from the case, and the leave was granted.

As will hereafter appear, the material testimony for the State on the trial of this case was an alleged confession by defendant made to detective Schoemaker in the presence of some other police officers. Schoemaker's testimony was objected to and a motion made to strike it out because it had been obtained under promise of leniency. The motion to strike was overruled. Berkson testified that after defendant's arrest and charge with the crime he had a talk with William Scott Stewart and Edgar Jonas, assistant State's attorneys who had charge of the prosecution. Stewart told witness they needed a defendant to testify in the case in order to secure a conviction; that witness' client was the cleanest man with the cleanest record, had the least to do with the crime in Stewart's opinion, and that he would like

to get him to testify. Witness asked Stewart what he wanted him to do. Stewart said he wanted defendant to make a complete confession, go on the stand and testify and plead guilty, and said, "You let your man do that and he will get out." Witness told defendant of the talk and that if he would plead guilty, take the stand and testify he would get out. The next day defendant made a complete confession to Jonas, one of the assistant State's attorneys. When the original case came to trial Stewart told witness, "Have your man withdraw his plea of not guilty and he can get out." Witness then withdrew the plea of not guilty and entered a plea of guilty. The case went to trial then, and defendant made a full disclosure upon the witness stand of his and the other defendants' connection with the case. Briefly, his testimony as reported in 312 Ill. was, that the parties planned the robbery of Lanus. Defendant and Lanus knew each other and defendant said he could not take part in robbing him, but he was finally induced to go and act as a guard and give signals for Heffernan and Cramer to enter the place of business of Lanus to rob him. Christensen drove the men over in his car and upon a signal drove in front of Lanus' place of business in order to be near to aid the robbers to escape. Lanus resisted and was killed. Cramer was shot through the arm. Defendant's testimony was the most material evidence for the prosecution on the trial reported in 312 Ill. The parties convicted in that case sued out a writ of error, and Berkson testified he talked to Stewart about how long his client was to remain in jail. Stewart told him the judgment might be reversed and a new trial granted and that the State needed Berkson's client. He suggested defendant stay in jail until the case was finally disposed of. Month after month he would tell Berkson to go to court and make a motion to continue the case until the next term. He did that for several months, and finally complained to Stewart the case was dragging along and his man was in jail. Stewart

would say, "Don't worry; just as soon as this case is out your man will be out; he will be out, and we must wait until this case is disposed of in the Supreme Court." After the case was reversed by the Supreme Court there was a re-trial of it several months afterwards. Witness told his client to stay in jail because the State's attorney told him that he would get out when the case of the other defendants was disposed of. The motions to continue defendant's case were made by witness at the request of the assistant State's attorney.

Stewart, called as a witness for the People, testified that he was formerly assistant State's attorney and as such participated in the trial of Heffernan, Cramer and Christensen, at which time defendant testified as a witness; that previous to that trial he talked with Berkson, defendant's attorney, about defendant going on the stand as a witness; that he thought he had stated to the judge presiding that he had not sufficient evidence against the defendants to convict without the testimony of defendant in this case, and that he said something with reference to a reward or immunity to defendant if he would testify. Witness conducted the examination of defendant in this case on that trial. He testified that if Berkson had the impression that immunity was promised defendant he was warranted in having that impression. In answer to questions asked by the court, witness said he never talked with Berkson in the presence of defendant but did talk with him about having defendant testify on the stand against the other defendants; that he needed his testimony to convict the other defendants, and that defendant changed his plea of not guilty in that case to one of guilty. Defendant testified in the same manner he had told about the commission of the crime. Stewart further testified he gave the impression to Berkson that his client was going to be taken care of for his testimony against the other defendants.

326—17

The first conviction of defendant was reversed by this court because the State had induced him to plead guilty and testify against the other defendants by a promise of immunity, which promise had not been kept, and the court should have allowed defendant to withdraw his plea of guilty. The weight of the testimony shows that defendant was induced to make his confession to Stewart and Jonas, assistant State's attorneys, and to enter a plea of guilty and testify as a witness for the State against the other defendants indicted with him, by reason of the promise. The State does not really deny that fact but says two questions are presented for consideration: (1) Whether the State's attorney had the power to grant immunity to defendant for his testimony against his co-defendants; and (2) whether, if he had such power, the promise had not been fully complied with in this case.

The confession made by defendant to Jonas and Stewart, which was substantially what he testified to on the trial of his co-defendants, was not offered in evidence, but, as we have said, the most material testimony on the trial of this case was the testimony of detective Schoemaker of the confession defendant made to him. Schoemaker testified that confession was made in December, 1922, when defendant and the other parties indicted with him were arrested. The confession was objected to by defendant on the ground that it was procured by threats and promises. The court heard the testimony first out of the presence of the jury. Schoemaker testified there were present besides himself at the time, two or three other police officers; that there was no promise of immunity or favor made and there was no force, beating or slugging used. Defendant's brother, Benjamin, had been taken in custody also and was present. He was released the same day after Schoemaker talked with defendant. Three other officers substantially corroborated Schoemaker as to the circumstances under which the confession was made.

Defendant's brother, Benjamin, testified he had been at work with the Active Metal and Machinery Company eight years; that defendant was his only brother, and they lived with their father and mother at the time the arrest was made; that his brother refused to answer Schoemaker's questions about the Lanus case until Schoemaker came to him and his brother where they were in a room together and whispered to them. He said if defendant did not talk as he wanted him to, he would indict the witness as an accessory. If defendant did talk he would let witness go immediately afterward and see that defendant got off. Defendant then talked. Witness was released and went home ten or fifteen minutes afterwards. He knew nothing about the Lanus case.

Defendant testified that after he was taken into custody Schoemaker talked to him at length about the Lanus case. His brother was present and some four or five officers were in the room. He had a private talk with Schoemaker separate from the officers, which no one else heard or took part in. Schoemaker told witness if he did not talk about the murder as Cramer confessed, he would have his brother indicted as an accessory to the murder. He told witness' brother that also. He said if witness admitted Cramer's confession he would turn his brother loose immediately and see that witness got off very lightly. Schoemaker read Cramer's confession to witness. After that witness talked with Schoemaker, who subsequently presented a typewritten statement, which witness refused to sign. He testified he was struck by Lieutenant Eagan, on the third floor. No one else struck him. Eagan denied striking defendant. The testimony of Schoemaker was then admitted and heard by the jury.

At the time the assistant State's attorney made his promises and representations to defendant's attorney about confessing and testifying against Heffernan, Cramer and Christensen the inference is warranted that he knew of the

alleged confession to Schoemaker. That confession was not offered in evidence at the trial of Heffernan, Cramer and Christensen, but the State's attorney promised defendant's attorney if his client would go on the witness stand and make a full disclosure he would be let out. Defendant's testimony on the trial of his co-defendants was substantially the same as the confession made to Schoemaker, and the offer was, in effect, that if defendant would testify to the facts as he stated them in the confession he would be granted immunity. The conclusion seems irresistible that the State believed the story told by defendant on the witness stand would be much more effective than the testimony of Schoemaker that defendant had confessed, and defendant was induced to take the witness stand and tell the whole story. We think, also, the State had reasonable ground to doubt whether the Schoemaker confession was obtained by means and under circumstances which would render it admissible.

In its last analysis the situation presented is, that if defendant would take the witness stand in the trial of his co-defendants and tell the story of his connection with those who committed the murder which Schoemaker claims he had previously confessed to him, he would be granted immunity. The State believed and stated that the prosecution did not believe they had evidence to convict Heffernan, Cramer and Christensen unless defendant would tell his story on the stand. He told it and they were convicted. Under continued promises of the State, and at its request, defendant remained in jail for nearly three years while the *Heffernan case* was pending in the Supreme Court and until it was tried the second time after remandment. During all the time of this delay Berkson was conferring with the assistant State's attorney, who repeatedly said if defendant would do as he suggested he would get out. We repeat, the State does not deny that promise of immunity was made to defendant but questions whether the State's attorney had

the right to make the promise, and it inferentially questions whether the promise was not void and of no effect. That question, we think, was determined by this court in this case when it was before us in 317 Ill. The court said: "The motion to withdraw a plea of guilty is addressed to the discretion of the court, but where the plea of guilty has been induced by a promise made by authority of the public prosecutor in consideration of a full and fair disclosure by the defendant as a witness against his confederates, and the defendant has made such disclosure but the promise of the prosecutor has not been kept, leave to withdraw the plea should be allowed." In *People* v. *Heide,* 302 Ill. 624, the court said: "The rule is that a confession obtained under any promise or hope of immunity is not admissible in evidence. Such a confession is not voluntary where any degree of influence is used to obtain it by a person having authority over the crime charged or over the person of the prisoner. * * * The rule in this State is likewise that a confession becomes incompetent whenever any degree of influence has been exerted by any person having authority over the charge against the prisoner or over his person, tending to cause duress or hope of leniency, for the reason that the law presumes that such confession was prompted by that influence." To the same effect, also, is *People* v. *Buckminster,* 274 Ill. 435.

The Schoemaker confession was of doubtful competency as evidence. Defendant and his brother, both young men, testified Schoemaker said if defendant did not confess he would have his brother indicted also, but would let him go at once if defendant would confess. His brother had absolutely no connection with the crime, and it does not appear that Schoemaker even suspected him. Defendant testified, also, that he was assaulted by one of the officers and told if he did not do any talking "I will make you think you were in a massacre in Warsaw." Of course, the officers denied that testimony. The confession was not

used on that trial, but defendant was, under promise of immunity, induced to take the witness stand and testify to what he knew of the crime and what the different parties did. The assistant State's attorney told defendant's attorney that defendant was the cleanest man with the cleanest record of any of the defendants and asked that he take the stand and testify in the case. Thereafter defendant and his attorney followed the instructions of the assistant State's attorney until Heffernan and Cramer were finally sent to the penitentiary for life. For nearly three years defendant remained in jail. Once the indictment as to him was stricken with leave to re-instate and he was set at liberty. The same day he was recalled by the assistant State's attorney, returned without being taken in custody by an officer and was remanded to jail. Throughout the whole time, from the first trial of Heffernan, Cramer and Christensen, defendant substantially obeyed the orders or requests of the assistant State's attorney, who evidently believed, and we think had good ground for believing, that defendant would, in doing as the State's attorney requested, perform a service for the State that would entitle him to immunity.

Defendant was sentenced to imprisonment in the penitentiary for fourteen years, the minimum punishment for murder, and the People say in their brief that it is a question whether the promises made by the State's attorney have not been complied with in view of the fact that the sentence was for fourteen years' imprisonment. The promise was not that defendant should be given the lightest sentence provided by law for the crime, but that he would get out. It does not appear to us, in view of the promise of immunity and the action of the defendant in testifying and remaining in jail almost three years for that purpose, that the prosecution was serving the best interests of the State in causing defendant to be sentenced to imprisonment in the penitentiary after the State had made use of him in

securing the conviction and imprisonment of the men who were most responsible for the murder.

In consideration of all the circumstances of the case we are of opinion the judgment must be reversed and defendant released.

*Judgment reversed and defendant discharged.*

Mr. JUSTICE THOMPSON, dissenting.