139 So.2d 205 (1961)
242 La. 844
STATE of Louisiana
v.
Marcel HINGLE alias "Moose" Hingle.
No. 45612.
Supreme Court of Louisiana.
November 6, 1961.
On Rehearing March 26, 1962.
Frank J. Shea, New Orleans, for appellant.
Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Richard A. Dowling, Dist. Atty., Burton G. Klein, Asst. Dist. Atty., New Orleans, for appellee.
SANDERS, Justice.
The defendant, Marcel Hingle, appeals from his sentence of twenty years in the Louisiana State Penitentiary as an habitual criminal under a bill of information charging him with being a fourth offender.
The record discloses that Hingle was charged in bills of information Nos. 164,966 and 164,967 with the possession and sale of marihuana cigarettes. He pleaded not *206 guilty in both cases. On March 30, 1960, with the approval of the district attorney and with his recommendation to the court for a sentence of two and one-half years, the defendant withdrew his plea of not guilty in the latter case and pleaded guilty to the lesser offense of attempted possession. The court sentenced him to serve two and one-half years in the penitentiary. The district attorney entered a nolle prosequi of all remaining charges.
On May 23, 1960, while Hingle was serving his sentence, the State filed the present bill of information charging him as a fourth offender. A motion to quash was filed by the defendant. The court overruled this motion and found the defendant to be a fourth offender. A motion for a new trial was denied. The defendant was then sentenced to serve twenty years at hard labor in the penitentiary. The subject of this appeal is the bills of exception taken to the overruling of the motion to quash and the refusal to grant a new trial.
Hingle alleges in his motions that through his attorney he entered into an agreement with the district attorney and his assistant whereby he would plead guilty to attempted possession in case No. 164,967; that the district attorney would dismiss all other charges; that the defendant would receive a sentence of two and one-half years in the penitentiary; and that the district attorney would not file multiple offender charges against him.
Hingle contends that the district attorney knew of all convictions prior to the agreement. Furthermore, in reliance upon the commitment of the district attorney, he relinquished the substantial rights of trial by jury and an adjudication of his guilt in a case which had been weakened by the death of an important state witness.
In answer the district attorney admits the agreement. He asserts, however, that the agreement as to the multiple offender sentence was conditioned upon the defendant not having been convicted of a crime of violence, and that after the original sentence he discovered the defendant had been convicted of attempted robbery.
We find it unnecessary to resolve the factual issue relating to the content of the agreement. It was neither alleged in the pleadings nor does the evidence disclose that the trial judge was a party to any agreement. Moreover, the judge formally stated for the record that he did not become a party.
The question then is whether a plea bargain agreement of the district attorney not to invoke the enhanced sentence against the defendant as a multiple offender, to which the judge was not a party, is a bar to the present proceeding.
In overruling the motions to quash and for a new trial, the trial judge held that the court was not bound by the agreement; hence the agreement could not bar the imposition on the defendant of the minimum sentence for a fourth offender. With this ruling we agree.
The Louisiana Habitual Offender Law (LSA-R.S. 15:529.1) may be invoked after the defendant has commenced to serve the sentence imposed upon him as a first offender.[1] The fact that the former convictions were known at the time of the original sentence is immaterial, for it is essential that they be formally charged in order to sentence as a multiple offender.[2]
This law does not make it a crime to be a multiple offender. No independent offense is created. It merely defines a *207 status and prescribes the circumstances under which there is an enhanced penalty for the present crime. The additional sentence is for the basic offense only.[3]
The plea bargain in this case pertains to the extent of the punishment for the offense to which the defendant pleaded guilty. It can be viewed in no other light than a promise of immunity from the enhanced sentence.
By the weight of authority, agreements made solely by a prosecuting attorney granting immunity from sentence or assurance concerning the extent of a sentence are unenforceable and do not bar subsequent action by the court. Such agreements gain vitality only when the judge becomes a party. The benefits of plea bargains of this kind are not given judicial protection without prior judicial sanction.[4]
We consider this rule a sound one. It permits no restraint of the inherent powers of the court by pre-trial agreements of the prosecuting authority. It also reduces the opportunity for abuses in the administration of criminal justice. We apply it to the case before us. The court cannot be shackled by such bargains in justice.
The defendant relies upon our decision in State v. Mockosher, 205 La. 434, 17 So. 2d 575. It is not apposite. In that case the judge was a party to a plea agreement for a sentence not exceeding ten months. Hence we set aside the excessive sentence. We cannot extend that holding beyond its facts to embrace a case, such as the instant one, in which the judge did not become a party to the agreement.
The defendant further contends that the original sentence of two and one-half years was not vacated at the time of his sentence as a multiple offender, and that he has two sentences for the same crime. We find this to be correct.
LSA-R.S. 15:529.1(D) governs the sentencing of habitual offenders:
"* * * If the judge finds that he has been convicted of a prior felony or felonies, or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he has been so convicted, the court shall sentence him to the punishment prescribed in this Section, and shall vacate the previous sentence if already imposed, deducting from the new sentence the time actually served under the sentence so vacated."
The original sentence remains in effect. It follows that the subsequent sentence of twenty years is null and void. It must be set aside, and the case must be remanded for the imposition of a proper sentence.[5]
For the reasons assigned, the sentence of twenty years in the Louisiana State Penitentiary is annulled and set aside, and the case is remanded to the Criminal District Court for the Parish of Orleans for the imposition of sentence according to law.
FOURNET, C. J., and McCALEB, J., dissent with written reasons.
McCALEB, Justice (dissenting).
I do not agree with the majority that it was essential in this case for the judge to *208 approve the bargain made by the district attorney with the defendant in order for that agreement to become binding and enforceable. Since adherence to the bargain he had made to refrain from prosecuting the defendant as a multiple offender, in consideration of defendant's guilty plea to a lesser offense than the offense charged in the bills of information, depended solely on the will of the district attorney in his capacity as prosecutor and was not a matter within the province of the office of district judge, the judge's approval of this obligation of the prosecutor was immaterial and unnecessary, in my opinion.
I have no quarrel with the authorities cited by the majority, which are to the effect that a pre-sentence agreement between a public prosecutor and an accused is not binding unless it is approved by the trial judge. The reason for this rule is that it is the function of the judge, and the judge alone, to determine the proper sentence to be given on conviction of any offense. Hence, his prerogative cannot be affected by "deals" between the State and the accused. But that doctrine is inapposite in this case as to that portion of the district attorney's promise to refrain from charging the defendant as a multiple offender. Since the judge admittedly had no control over whether this part of the agreement was to be fulfilled or not, his sanction of it was not essential in order for it to have vitality.
Under R.S. 15:17 the district attorney is vested, subject to the supervision of the attorney general, with entire charge and control of every criminal prosecution instituted or pending in his jurisdiction and he is given full discretion by R.S. 15:529.1, as amended by Act 469 of 1958, of determining whether or not he will charge a convicted person as a multiple offender when the offender's record shows that he has previously been convicted of a felony under the laws of this State or the laws of another State or of the United States.[1]
Thus, it is seen that the district attorneys are clothed with broad powers, being free to bargain with those accused of crime, whether prosecution will be had for a greater offense or a lesser offense, including the right, in cases involving multiple offenders, to refrain from prosecuting them as such. None of any of these agreements are required to be approved by the district judge. Therefore, when a district attorney makes a bargain with one accused of crime, and the latter has relinquished valuable fundamental rights such as trial by jury, it is but consonant with the discretion reposed in the prosecutor by the 1958 Legislature to regard his agreement as a pledge of public faith (see Commonwealth v. St. John, 173 Mass. 566, 54 N.E. 254, 73 Am.St.Rep. 321 and State v. Ward, 112 W.Va. 552, 165 S.E. 803, 85 A.L.R. 1175) which should be enforced by the Court.
I make no individual evaluation as to the defense of the district attorney in this case, in which he claims justification for abrogating his bargain on the ground that he would not have made it had he known that defendant had been previously convicted of a crime of violence. All that I do say is that this Court should determine whether the evidence is such as to justify the action taken *209 by the district attorney for, to deny the defendant the right to have the bargain enforced, if it be valid, is to hold that he deals with law enforcement officers at his peril and cannot place any reliance whatever in their pledge on behalf of the people they represent.
I respectfully dissent.
FOURNET, Chief Justice (dissenting).
I am in full accord with the views expressed by Mr. Justice McCALEB in his dissenting opinion to the effect that the district attorney has full control of all prosecutions and it is within his sole province to determine whether he will prosecute or not, the trial judge's consent in this respect being entirely unnecessary.
Even were I to concede, however, the correctness of the majority view that the trial judge's consent is necessary, I cannot agree with the conclusion that the sentence of the defendanta multiple offenderis null and void in the instant case simply because the trial judge overlooked or failed to carry out his mandatory duty to vacate the previous sentence imposed and deduct from the new one the time the defendant actually served under the first. It is my opinion that in such a case it would not only be the province, but the duty, of this court to vacate the first or previous sentence, and then remand the case to the lower court for the sole purpose of having determined by it the time actually served by the defendant under the previous sentence so that such time might be deducted by the trial court from the term of the final sentence.

ON REHEARING
FOURNET, Chief Justice.
While the defendant, Marcel Hingle, was serving a sentence of two and a half years at hard labor imposed when he pleaded guilty in Section "C" of the Criminal District Court for the Parish of Orleans to "attempted possession" under a Bill of Information charging him with "possession of marijuana," he was returned to the same court for prosecution as a multiple offender on a writ procured by the district attorney. The defendant thereuponin a motion to quash that was overruledinterposed as a plea in bar the district attorney's agreement of immunity from such prosecution when he pleaded guilty to "attempted possession." He is appealing from his conviction and sentence as a fourth offender.
As pointed out by the author of the majority opinion when this case was originally before us, according to the weight of authority in this country, a prosecuting attorney cannot, without the advice and/or consent of the court, make a binding agreement exempting a person from criminal liability who is willing to (1) testify against others, or (2) plead guilty to a lesser offense. A study of all of the cases and authorities on this subject, however, discloses that in those jurisdictions where the advice or consent of the court is required before the granted immunity can be effective, the decisions are controlled by specific statutory provisions to this effect, or predicated upon jurisprudence traceable to the common law as adopted in this country early in its history, and which, although granting to the attorney general in England the power to make such agreements, hedged it about with restrictions. See 16 C.J. §§ 65, 759, pp. 94, 417; 22 C.J.S. Criminal Law § 423(5), p. 1186; 1 Wharton's Criminal Law 394, Section 165; 8 R.C.L. 125, Section 101; 15 Am. Jur. 17, Sections 322 and 323; Tullis v. State, 41 Tex.Cr.R. 87, 52 S.W. 83; Camron v. State, 32 Tex.Cr.R. 180, 22 S.W. 682; Scribner v. State, 9 Okl.Cr. 465, 132 P. 933, United States v. Ford, 99 U.S. 594, 25 L.Ed. 399; State v. Keep, 85 Or. 265, 166 P. 936; People v. Groves, 63 Cal.App. 709, 219 P. 1033; State v. Lopez, 19 Mo. 254, 255; People v. More, 71 Cal. 546, 12 P. 631; Lowe v. State, 111 Md. 1, 73 A. 637, 24 L.R.A.,N.S., 878; Runnels v. State, 28 Ark. 121; and the annotation at 85 A.L.R. 1177. Nevertheless, as recognized *210 in Scribner v. State, supra, in those states "in which a county attorney may enter a nolle prosequi without the consent of the court he may grant immunity by contract without the approval of the court * * *."[1] See, 1 Varon's Searches, Seizures, and Immunities 511, Section 3; Commonwealth v. St. John, 173 Mass. 566, 54 N.E. 254; People v. Bogolowski, 326 Ill. 253, 157 N.E. 181; State of West Virginia v. Ward, 112 W.Va. 522, 165 S.E. 803, 85 A.L.R. 1175; and People v. Siciliano, 185 Misc. 149, 56 N.Y.S.2d 80. In the latter case the New York court was emphatic in stating that "The practice of accepting a guilty plea under one indictment upon stipulation that the other indictments then pending against the accused will be dismissed is one of long standing in our criminal courts. The right of a district attorney to make such an agreement and the power of the court to enforce it have never been successfully challenged."[2] See, also, State ex rel. Griffin v. Smith, 363 Mo. 1235, 258 S.W.2d 590; People ex rel. Elliott v. Covelli, 415 Ill. 79, 112 N.E.2d 156; State ex rel. Dowd v. Nangle, 365 Mo. 134, 276 S.W.2d 135; and State v. Montgomery, Mo., 276 S.W.2d 166. (The emphasis has been supplied.)
The rationale for such a ruling is to be found in a number of cases, notably Commonwealth v. St. John, supra, where the court stated that "When such promises are made by the public prosecutor, or with his authority, the court will see that due regard is paid to them, and that the public faith which has been pledged by him is duly kept." This is particularly true where the accused, in reliance on such a pledge, has carried out his part of the agreement, and, in doing so, may have relinquished valuable fundamental rights, such as the constitutional guarantee he cannot be compelled to give evidence against himself, a trial on the merits, and the possibility of being entirely exonerated if the evidence is weak and insufficient to sustain a conviction. See, State v. Mockosher, 205 La. 434, 17 So.2d 575; People ex rel. Valle v. Bannan, 364 Mich. 471, 110 N.W.2d 673; and Commonwealth v. Smith, Ky., 244 S.W.2d 724
Louisiana is in the category of those states that have no statutory or jurisprudential prohibition against the power of a district attorney to nolle prosequi a case or grant immunity to an accused completely independent of the court. On the contrary, under our specific statutory provisions, "The district attorney is the representative of the public and the legal adviser of the grand jury. * * *" and, "Subject to the supervision of the attorney-general * * * shall have entire charge and control of every criminal prosecution instituted or pending in any parish wherein he is a district attorney, and shall determine whom, when, and how he shall prosecute * * *." Moreover, "The exercise of the power to enter a nolle prosequi is a matter that shall be subject to the sound discretion and control of the district attorney, and in order to exercise that power he shall not have to obtain the consent or permission of the court." Articles 18, 17, and 329, respectively, of the Code of Criminal Procedure, now R.S. 15:18, 17, and 329. (The emphasis has been supplied.)
Dr. Dale E. Bennett of the Louisiana State University law faculty points out in his article in 14 Louisiana Law Review, referred to above in Footnote No. 1, that "Article 329 codified the existing Louisiana jurisprudence and general common law rule when it stated that power to nolle prosequi an indictment should be `subject to the sound discretion and control of the district attorney, and in order to exercise that power he shall not have to obtain the consent or permission of the court.'" He also *211 pointed out that "A fear that the prosecutor's discretion may be abused led to the proposal in the American Law Institute's Code of Criminal Procedure that a prosecution shall not be dismissed except by court order and for good cause entered of record by a written statement," from which source, it may be added, stem many of the statutes on the subject adopted in the various states and which, to a large degree, account for the "weight of authority" in this country above referred to, but which provision has also been characterized as "as misguided as it is well-intentioned."[3]
And while Dr. Bennett recognized that "Such a rule puts tremendous power in the hands of the district attorney, who may thus nullify the findings of the grand jury," he correctly points out that "Actually this danger is largely conjectural, since the force of public opinion and the district attorney's sense of public responsibility will generally preclude such a summary disposition of grand jury indictments." Further emphasizing this point he states: "There are a number of rather convincing arguments for not limiting the district attorney's full discretionary power to nolle prosequi indictments. Foremost of these are the facts that the district attorney frequently operates with a staff which is inadequate for the proper prosecution of all charges which may be brought by an overactive grand jury, and that the district attorney has the best opportunity to investigate and sift such charges."
These views with respect to preserving the prosecuting attorney's discretion in all of its amplitude with respect to the power to nolle prosequi criminal charges, or, as inclusive therein, bargain with an accused for evidence and testimony, or pleas to lesser offenses, are shared by others of note, as, for example, the commissions headed by the then Attorney General of the United States George W. Wickersham, reflected in the reports of these commissions issued in 1931 as "Report on Prosecution," and "Report on The Cost of Crime," and by Thurman W. Arnold, Professor of Law of Yale University. In the article at 50 Yale Law Journal 110 it is pointed out that it is only in the privacy of his office that a prosecuting attorney "can conduct the plea bargaining which * * * is a highly useful as well as usual procedure in criminal administration," since, as Professor Arnold emphasizes in an article at 42 Yale Law Journal, 1, 9, "His choice will be either to make reasonable compromises" with the innumerable offenders caught in the net, many of whom are unimportant, "or else * * * clog the machinery with relentless prosecution of comparatively harmless persons."
But even should it be conceded that the consent or approval of the trial judge was necessary to perfect the agreement pleaded in bar of the charge levelled against the defendant as a multiple offender under Louisiana law, we think the evidence clearly discloses the consent and approval of the trial judge in this respect was secured, a fact conceded by the state in its brief on rehearing.
The uncontradicted evidence on this phase of the matter shows that after the assistant district attorney in charge of the prosecution of Hingle in Section "C" of the Criminal District Court for the Parish of Orleans had tentatively agreed with defense counsel on the "package deal" proposed by that counsel, as will hereinafter be set out, the approval of the assistant's superior thereto was sought and secured as the result of several conferences held in the office of the district attorney and attended by that official, his assistants assigned to Sections "C" and "E" (in both of which there were cases pending against Hingle), *212 and defense counsel. As a result, the assistant assigned to Section "C", in seeking the approval of the trial judge, left with him the police record of Hingle that was in this assistant's file, and on which the trial judge noted in his own hand the several sentences Hingle had served under previous convictions. And while defense counsel was experiencing difficulty in eliciting from this assistant (while on the stand during the trial of the motion to quash in the instant case) an admission that in discussing the so-called "deal" with the trial judge he (the assistant) had recommended a sentence that had been agreed upon by all counsel (two and a half years), the trial judge, to avoid further examination along this line interrupted the interrogation with the most emphatic observation: "I can help the situation. You (the assistant) did recommend to me two and a half years in this case, and I well know you did, and you did it in the presence of Mr. Shea (defense counsel)." The defendant was not only sentenced accordingly, but, as further shown by the evidence, the trial judge, in accepting Hingle's plea of guilty to the lesser offense of "attempted possession" of narcotics and pronouncing that sentence, reminded Hingle that he "could have been charged as a fourth offender." (The emphasis has been supplied.)
It is obvious, however, from the above quoted provisions of our Code of Criminal Procedure that the legislature of Louisiana has clothed our district attorneys and their assistants with very broad powers and discretion with respect to whom, among those charged with crimes, they will prosecute, and granted them the power to determine, without the advice or consent of the court, what charges they will nolle prosequi (whether embodied in informations or indictments) and with whom they will bargain for testimony or pleas whenever, in the exercise of that discretion, it is deemed advisable under the circumstances of the particular case. And when in a bargain made by a district attorney an accused is promised immunity, the courts should give effect to such agreement, for it would not be consonant with the pledge of the state's public faith reposed in these officers by the legislative branch of our government to permit them to repudiate bargains made with persons accused of crimes who are acting in good faith, and, in reliance thereon, comply with their commitments by relinquishing valuable and fundamental rights.
Actually, the prosecuting attorney does not even contend our law is other than as above set out, for he argues in brief that the trial judge was powerless to "control the action of the district attorney", in filing the multiple offender charges.[4] His case is predicated, rather, on the contention that he is not bound by the agreement to grant immunity from such charge in this case because an important element of the agreement was the provision that the defendant had not been previously convicted of a crime of violence, and, at the time the agreement was confected, he was unaware Hingle had been convicted of armed robbery.
On this phase of the matter, the record discloses that two Bills of Information were filed in the district attorney's office against the defendant on September 21, 1959, in both of which he was charged with separate and distinct charges of possession and sale of marijuana, Bill of Information No. 164-966 being allotted to Section "E" of the Criminal District Court for the Parish of Orleans, and Bill of Information No. 164-967 being allotted to Section "C". The record further reveals, as summarized in the state's brief, that on the day before the scheduled trial the assistant district attorney *213 assigned to Section "C" called defense counsel on the telephone to ask whether Hingle was going to plead guilty or go to trial. At this time, and in subsequent conversations in the office of the district attorney, defense counsel suggested a plea would be entered if the charge in Section "C" was reduced to "attempted possession" of narcotics, the case in Section "E" dismissed, and the defendant not charged as a multiple offender. The state, recognizing its chance of a conviction had been weakened by the death of the chemist who had analyzed the material taken from the accused at the time of his arrestsand who would not, therefore, be available to testifyagreed to this offer. The trial judge was apprized of this in his chambers by counsel for both sides, and acquiesced therein, as shown hereinabove.
The question of whether the agreement was conditioned upon the fact that the accused "had not been convicted of a crime of violence" is one of fact that was not resolved in the trial court, although the judge, in his reasons for overruling the motion to quash as set out in his per curiam, did recognize that "there are inequities in the situation in behalf of the defendant Hingle" in that "he did give up a substantial right to a trial on the merits."
Our appreciation of the evidence, after a careful study and analysis, is that the agreement confected between the district attorney and defense counsel was unconditional. However, it is apt to observe that the assistant assigned to Section "C," in recommending to his superior the acceptance of the "deal" proposed by defense counsel, acted in good faith, believing at the time that Hingle had never previous thereto been convicted of a crime of violence as the record in his file on this case furnished him by the police department and on which he reliedfailed to disclose such a conviction.[5] This conclusion is fortified by the fact that this assistant noted in his own handwriting in this file that according to defendant's record he had never previous thereto been convicted of a crime of violence. It was only after publicity in the press that he secured a new copy of the police department's record on Hingle and discovered the prior conviction for armed robbery.
For the reasons assigned, the conviction and sentence of the defendant as a multiple offender are annulled and set aside, and he is ordered returned to the state penitentiary at Angola to complete service of the sentence originally imposed upon him in Section "C" of the Criminal District Court for the Parish of Orleans under his plea of guilty of "attempted possession" of narcotics.
SANDERS, Justice (concurring).
I concur in the result reached in the decision on rehearing. However, certain features of the majority opinion require that I record my views separately from those of my brethren on the important questions raised by this case.
By statement of facts in its brief on rehearing, the state makes the following concession:
"Defense counsel and the Assistant District Attorney spoke with the Trial Judge and advised him of the agreement reached between the State and defense counsel. In this conversation, held in Chambers, the Trial Judge was aware of the agreement reached by the defense counsel and the Assistant District Attorney. The Trial Judge agreed on a sentence of two and one-half years in the Section `C' case." (Italics supplied)
While this concession, in my opinion, goes well beyond the pleadings and evidence in the record, it is nonetheless binding upon the state for purposes of this appeal. With *214 this concession, the case falls squarely within the holding of this Court in State v. Mockosher, 205 La. 434, 17 So.2d 575. The rule of that case is that a plea bargain agreement of this type sanctioned by the judge is enforceable as a bar to court proceedings in violation of its terms. The rule is supported by the weight of authority elsewhere. On this basis, which I believe to be sound, I agree that the result reached by the Court on rehearing is correct.
However, I cannot subscribe to the finding in the majority opinion that "the evidence clearly discloses the consent and approval of the trial judge * * * [to the plea bargain agreement] was secured * * *." The motion to quash contains no allegation that the judge approved the agreement. The answer to the motion filed by the district attorney specifically alleges that the judge was not a party to it. The record shows only (and this by a statement of the trial judge) that the assistant district attorney "recommended" to the judge a sentence of two and a half years. Nowhere in the record is it established that the trial judge concurred in the agreement or made any commitment in reference to it. The trial judge made his position perfectly clear when he stated in ruling on the motion to quash: "* * * the court must state that it is not part, has not been part, of any agreement * * *."
I am also unable to subscribe to the pronouncement, unnecessary for the holding in this case and conceded to be the minority rule, that in Louisiana a district attorney may grant immunity to an accused completely independent of the court. This conclusion is based primarily upon the circumstance that a district attorney in this state has the authority to enter a nolle prosequi without the consent of the court. This authority of nolle prosequi without the consent of the court is expressly conferred by statute. See LSA-R.S. 15:327-329. This authority is clear. However, contrary to the law of many of the other states,[1] a nolle prosequi in this state does not bar a subsequent prosecution for the same offense. In legal effect it only discharges the particular indictment. LSA-R. S. 15:328. There is a vast difference between entering a nolle prosequi and granting full immunity for crime. The first is procedural, but the latter is a complete bar to prosecution. This being true, it does not follow that the district attorney alone has general authority to grant immunity to an accused for a crime. An additional reason why such an inference does not follow is that the legislature has specified the instances in which immunity may arise.[2] In the one instance in which discretion is vested in the district attorney,[3] the circumstances are carefully circumscribed.
It must be conceded, as stated in the majority opinion, that the district attorney is given full discretion as to whom, when, and how he is to prosecute. He also has full discretion in determining whether an accused is to be charged as a multiple offender. However, it is my view that the very existence of this plenary discretion supports the rule that a court will not bar a prosecution because of a promise of immunity made by the district attorney alone. The promise is an extraneous matter related solely to the exercise of the district attorney's discretion. An inquiry into it requires the court to probe both the district attorney's office and his conscience. To bar a prosecution or withhold sentence because of it is an infringement by the court upon the discretion exercised by the district attorney when he elected to prosecute the action.
A basic reason why the judge's approval of such an agreement is required for enforceability *215 is that the effect of its enforcement is to make it binding upon the court itselfto such an extent that the processes of the court are stayed although the accused is before it for sentence on a charge valid on its face.
I recognize that there is a minority view that the prosecuting attorney alone may grant immunity to an accused for crime. However, decisions squarely supporting it are difficult to find. Of the several cases cited in the majority opinion as supporting it either directly or by analogy, only one is squarely decisive of the point: People v. Bogolowski, 326 Ill. 253, 157 N.E. 181. Early comment on this case suggests that it then stood almost alone in the jurisprudence.[4] I find little or no jurisprudential support which has been added since that time. I see no reason to adopt this view in the instant case.
That there are dangers in an unrestricted rule which would empower a district attorney to grant immunity for crime is evident.
In the first place, the content of verbal agreements, such as the one in the instant case, will provide a prolific source of litigation. The recollection of the parties is frequently imperfect. Misconstruction is easy. A careless word, a misconstrued statement, or a distorted expression of the district attorney will erupt into litigation. The criminal of today seeks the immunity bath as eagerly as others in history have sought the miraculous fountain of youth.
Furthermore, it opens the door to many abuses in plea bargaining. Professor Newman F. Baker in his excellent article, "The Prosecutor-Initiation of Prosecution," 23 Journal of the American Institute of Criminal Law and Criminology 770, 790, makes the following allusion to this:
"But the chief loss to orderly administration of the criminal law which comes from bargaining for pleas of guilty, pleas to lesser offenses and the `immunity bath' is that it is all extra-legal, secret and under-cover. Statutes are stretched or ignored. It is `law in action' entirely, with slight regard for law in books."[5]
For a comprehensive statement of numerous objections to vesting unrestricted authority in the prosecuting officer to extend immunity to an accused for crime, see I Varon, Searches, Seizures and Immunities pp. 513-514 (1961).
The office of district attorney in this state is one of fine tradition. It is also one of great power. To further extend this power at a time when the Louisiana State Law Institute is engaged in a revision of the Code of Criminal Procedure is, in my opinion, inadvisable. If an extension is to be made, it should be by statutory enactment as part of the new Code. In such an enactment the exercise of the great power of granting immunity for crime can be regulated in the interest of an efficient administration of justice.
For the foregoing reasons, I respectfully concur in the decree.
NOTES
[1] LSA-R.S. 15:529.1 (D); State v. Guidry, 169 La. 215, 124 So. 832; State v. Rodman, 208 La. 523, 23 So.2d 204; State v. George, 218 La. 18, 48 So.2d 265.
[2] LSA-R.S. 15:529.1(D); State v. Daniel, 141 La. 423, 75 So. 102; State v. Habighorst, 163 La. 552, 112 So. 414. Cf. Graham v. State of West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917; Dodd v. Martin. 248 N.Y. 394, 162 N.E. 293; People v. Gorney, 203 Misc. 512, 103 N.Y.S.2d 75.
[3] State v. Guidry, 169 La. 215, 124 So. 832; State v. Hardy, 174 La. 458, 141 So. 27; State v. George, 218 La. 18, 48 So.2d 265.
[4] People v. Groves et al., 63 Cal.App. 709, 219 P. 1033; State v. Ward, 112 W.Va. 552, 165 S.E. 803, 85 A.L.R. 1175, 1177 (annotation); State v. Guild, 149 Mo. 370, 50 S.W. 909; State v. Lopez, 19 Mo. 254; 5 Wharton's Criminal Law and Procedure (Anderson) Sec. 2210, p. 421. See also State v. Mockosher, 205 La. 434, 17 So. 2d 575.
[5] See State v. Daniel, 141 La. 423, 75 So. 102; State v. Lee, 171 La. 744, 132 So. 219; State v. Childers, 197 La. 715, 2 So.2d 189; Cf. State v. George, 218 La. 18, 48 So.2d 265.
[1] In this connection, it is significant to note that the provisions of R.S. 15:259.1 were mandatory at the time of the adoption of the Revised Statutes in 1950 and, for that matter, ever since the passage of the original Multiple Offender Act in 1928 (see Act 15 of 1928), that statute imposing upon the district attorney the duty of charging an accused as a multiple offender when he had been previously convicted of a felony. However, by Act 469 of 1958 the Legislature effected an important change in the law by the substitution of the word "may" for the word "shall" in the clause pertaining to the district attorney's duty of filing a bill of information against a multiple offender.

Undoubtedly, one of the motivating purposes of this amendment, which invests greater discretionary powers in public prosecutors, is to permit them to make bargains with multiple offenders, as was done in this case.
[1] See the discussions at 42 Yale Law Journal 1, 9; 50 Yale Law Journal 107, etc., and 14 Louisiana Law Review at pages 25 and 26, as well as the authorities there cited.
[2] This procedure in New York has since been changed by statute.
[3] 50 Yale Law Journal at page 110. Significantly, the Louisiana legislature has never felt it wise to accept this recommendation of the American Law Institute as embodied in one of the articles of its proposed model Code of Criminal Procedure by changing the provisions of Article 329 of our own Code of Criminal Procedure on this subject, above quoted in full.
[4] Of particular importance on this phase of the matter are the provisions of R.S. 15:529.1, as amended by Act 469 of 1958, which give the district attorneys of this state full discretion in determining whether an accused is to be charged as a multiple offender when his record discloses he has previously been convicted as a felon under the laws of this state, the laws of another state, or of the United States.
[5] The police record in the file of the assistant assigned to handle the criminal docket in Section "E" disclosed Hingle's conviction of the crime of armed robbery.
[1] See Commentary, Code of Criminal Procedure, American Law Institute (Official Draft, June 15, 1930) pp. 893-894.
[2] See e. g. LSA-R.S. 14:121; LSA-R.S. 15:468; LSA-R.S. 51:141, 146, 425.
[3] LSA-R.S. 14:121 (Informer in bribery or corrupt influence).
[4] In 23 Journal of the American Institute of Criminal Law and Criminology 789 (1933), Professor Newman F. Baker, Northwestern School of Law, made the following comment on the case: "Except in Texas the courts of other states do not agree that the prosecutor has the power to make a binding promise of immunity but hold that the bargain creates only an equitable right to clemency."
[5] See also Hall, Theft, Law and Society pp. 111-121 (1935); Moley, Politics and Criminal Prosecution pp. 149-192 (1929).